1    GIBSON, DUNN & CRUTCHER LLP
     JASON C. SCHWARTZ (*pro hac vice*)
2      jschwartz@gibsondunn.com
     ZOË A. KLEIN (*pro hac vice*)
3      zklein@gibsondunn.com
     1050 Connecticut Avenue, N.W.
4    Washington, DC  20036
     Telephone: 202.955.8500
5    Facsimile:  202.467.0539

6    JOSEPH A. GORMAN, SBN 267553
       jgorman@gibsondunn.com
7    555 Mission Street, Suite 3000
     San Francisco, CA  94105
8    Telephone: 415.393.8200
     Facsimile:  415.393.8306

9

10   Attorneys for Defendant salesforce.com, inc.

11

12                    UNITED STATES DISTRICT COURT

13                  NORTHERN DISTRICT OF CALIFORNIA

14

15   STEPHEN ANDERSON,                    CASE NO. 4:18-cv-06712-PJH

16              Plaintiff,                **DEFENDANT SALESFORCE.COM, INC.'S
                                          NOTICE OF MOTION AND MOTION TO**
17        v.                              **COMPEL ARBITRATION AND STAY
                                          PROCEEDINGS**
18   SALESFORCE.COM, INC.,
                                          Date:          January 9, 2019
19              Defendant.                Time:          9:00 am
                                          Location:      Courtroom 3
20
                                          Action Filed: November 5, 2018
21

22

23

24

25

26

27

28

1   TO ALL PARTIES AND THEIR RESPECTIVE ATTORNEYS OF RECORD:

2       PLEASE TAKE NOTICE that, on January 9, 2019, at 9:00 a.m., or as soon as the matter may

3   be heard before the Honorable Phyllis Hamilton of the United States District Court for the Northern

4   District of California in the Oakland Courthouse, Courtroom 3, Third Floor, 1301 Clay Street, Oakland,

5   California 94612, Defendant salesforce.com, inc. ("Salesforce") will and does move this Court for an

6   order compelling arbitration of Counts 2 through 11 of the Complaint and staying proceedings.  This

7   motion is brought on the grounds that Plaintiff's claims asserted in Counts 2 through 11 of the

8   Complaint are subject to a valid and enforceable arbitration agreement that requires Plaintiff to arbitrate

9   those claims, and that the remaining claims in Count 1 of the Complaint substantially overlap with the

10  arbitrable claims.  *See* 9 U.S.C. §§ 3–4.

11      Salesforce's motion is based upon this Notice of Motion, the accompanying Memorandum of

12  Points and Authorities, the concurrently filed Declaration of Jason C. Schwartz, the concurrently filed

13  Declaration of Kimberly Strashovskiy, all other matters of which the Court may take judicial notice,

14  any further evidence or argument offered to the Court at the hearing on this Motion, and any other

15  matters that the Court may consider.

16

17  Dated:  December 5, 2018

18                                          GIBSON, DUNN & CRUTCHER LLP

19

20                                          By:  */s/ Jason C. Schwartz*
                                                 Jason C. Schwartz
21
22                                          Attorneys for Defendant SALESFORCE.COM, INC.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Gibson, Dunn &
Crutcher LLP

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ........................................................................................................... 1

II.    STATEMENT OF RELEVANT FACTS .................................................................... 2

III.    ARGUMENT .................................................................................................................. 3

      A.    The Arbitration Agreement Is Governed By The Federal Arbitration Act ................... 4

      B.    The Arbitration Agreement Is Valid And Must Be Enforced ....................................... 5

            1.    A Valid Agreement To Arbitrate Exists ............................................................. 6

            2.    Ten of Plaintiff's Eleven Claims Are Covered By The Arbitration
               Agreement ............................................................................................................ 7

      C.    The Matter Should Be Stayed While Arbitration Proceeds ........................................... 9

IV.    CONCLUSION ............................................................................................................. 11

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995)..................................................................................................4, 5

*AT&T Mobility, LLC v. Concepcion*,
    563 U.S. 333 (2011)..............................................................................................1, 3, 4, 9

*Buckeye Check Cashing, Inc. v. Cardegna*,
    546 U.S. 440 (2006)........................................................................................................4

*CarMax Auto Superstores Cal. LLC v. Hernandez*,
    94 F. Supp. 3d 1078 (C.D. Cal. 2015) ...........................................................................5

*Citizens Bank v. Alafabco, Inc.*,
    539 U.S. 52 (2003)..........................................................................................................5

*CompuCredit Corp. v. Greenwood*,
    565 U.S. 95 (2012)..........................................................................................................8

*Dean Witter Reynolds Inc. v. Byrd*,
    470 U.S. 213 (1985)........................................................................................................8

*DIRECTV, Inc. v. Imurgia*,
    136 S. Ct. 463 (2015).....................................................................................................4

*E.E.O.C. v. Waffle House, Inc.*,
    534 U.S. 279 (2002)........................................................................................................7

*Epic Sys. Corp. v. Lewis*,
    138 S. Ct. 1612 (2018)................................................................................................6, 8

*Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak St.*,
    35 Cal. 3d 312 (1983) .....................................................................................................5

*First Options of Chi., Inc. v. Kaplan*,
    514 U.S. 938 (1995).........................................................................................................6

*Green Tree Fin. Corp. v. Randolph*,
    531 U.S. 79 (2000)..........................................................................................................4

*Hall St. Assocs., L.L.C. v. Mattel, Inc.*,
    552 U.S. 576 (2008)........................................................................................................4

*Howsam v. Dean Witter Reynolds, Inc.*,
    537 U.S. 79 (2002)..........................................................................................................5

Gibson, Dunn &
Crutcher LLP

*Jenkins v. Sterling Jewelers, Inc.*,
  2018 WL 922386 (S.D. Cal. Feb. 16, 2018) ...................................................................9

*KPMG LLP v. Cocchi*,
  565 U.S. 18 (2011)......................................................................................................3, 8

*Lang v. Skytap, Inc.*,
  2018 WL 5304842 (N.D. Cal. Oct. 24, 2018).................................................................5

*Laubenstein v. Conair Corp.*,
  2014 WL 6609164 (W.D. Ark. Nov. 19, 2014) ..............................................................8

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005)......................................................................................10

*Marin Storage & Trucking, Inc. v. Benco Contracting & Eng'g, Inc.*,
  89 Cal. App. 4th 1042 (2001) ........................................................................................6

*Mastrobuono v. Shearson Lehman Hutton*,
  514 U.S. 52 (1995).........................................................................................................4

*Metalclad Corp. v. Ventana Envtl. Organizational P'ship*,
  109 Cal. App. 4th 1705 (2003) ......................................................................................6

*Mohebbi v. Khazen*,
  2014 WL 6845477 (N.D. Cal. Dec. 4, 2014) .................................................................9

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983)....................................................................................................4, 5, 9

*Paramount Farms, Inc. v. Ventilex B. V.*,
  2009 WL 161052 (E.D. Cal. Jan. 22, 2009)................................................................10

*Perry v. Thomas*,
  482 U.S. 483 (1987).......................................................................................................4

*Preston v. Ferrer*,
  552 U.S. 346 (2008).......................................................................................................4

*Pryner v. Tractor Supply Co.*,
  109 F.3d 354 (7th Cir. 1997)........................................................................................10

*Rosenthal v. Great W. Fin. Sec. Corp.*,
  14 Cal. 4th 394 (1996) ...................................................................................................6

*Sharp Corp. v. Hisense USA Corp.*,
  2017 WL 6017897 (N.D. Cal. Dec. 5, 2017) ...............................................................10

*Stewart v. Doral Fin. Corp.*,
  997 F. Supp. 2d 129 (D.P.R. 2014)................................................................................8

*Stewart v. Preston Pipeline Inc.*,
    134 Cal. App. 4th 1565 (2005) ..........................................................................................................6

*Strotz v. Dean Witter Reynolds, Inc.*,
    223 Cal. App. 3d 208 (1990)..............................................................................................................6

*Swift v. Zynga Game Network, Inc.*,
    805 F. Supp. 2d 904 (N.D. Cal. 2011) ...........................................................................................10

*United Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*,
    46 Fed. App'x. 412 (9th Cir. 2002)........................................................................................1, 3, 10

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
    363 U.S. 574 (1960)......................................................................................................................6, 7

*VanSlyck v. GoJet Airlines, LLC*,
    323 F.R.D. 266 (N.D. Ill. 2018).....................................................................................................10

*Wagner v. Stratton Oakmont, Inc.*,
    83 F.3d 1046 (9th Cir. 1996).............................................................................................................7

*Warner Bros. Entm't Inc. v. Starline Tours of Hollywood, Inc.*,
    2016 WL 10771309 (C.D. Cal. June 20, 2016) ...............................................................................9

*Wiggins v. ING U.S., Inc.*,
    2015 WL 3771646 (D. Conn. Dec. 15, 2015)..................................................................................8

**Statutes**

9 U.S.C. § 2 ..................................................................................................................................1, 3, 4

9 U.S.C. § 3 ..................................................................................................................................1, 3, 9

9 U.S.C. § 4 ........................................................................................................................................3, 5

18 U.S.C. § 1514A(e)(2) ........................................................................................................................1

Cal. Civ. Code § 1550 .............................................................................................................................6

Cal. Civ. Code § 1556 .............................................................................................................................6

Cal. Civ. Code, § 1565 ............................................................................................................................6

DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS
– CASE NO. 4:18-CV-06712-PJH

Gibson, Dunn &
Crutcher LLP

1

## I.    INTRODUCTION

2      Plaintiff Stephen Anderson's Complaint against salesforce.com, inc. ("Salesforce") asserts

3   eleven causes of action for various forms of employment discrimination and retaliation, ten of which

4   arise under the Family and Medical Leave Act ("FMLA"), the California Fair Employment and

5   Housing Act ("FEHA"), the California Family Rights Act ("CFRA"), and the California Labor Code,

6   and one of which arises under the Sarbanes-Oxley Act ("SOX").  All of these claims rely on the same

7   series of facts and allege the same underlying wrongdoing, and all but the SOX claim are subject to a

8   valid and enforceable pre-dispute arbitration agreement that Plaintiff voluntarily entered into with

9   Salesforce (the "Arbitration Agreement").

10      The Federal Arbitration Act ("FAA") provides that any agreement within its scope "shall be

11   valid, irrevocable, and enforceable."  *See* 9 U.S.C. § 2; *AT&T Mobility, LLC v. Concepcion*, 563 U.S.

12   333, 339 (2011).  The purpose of the FAA "is to ensure the enforcement of arbitration agreements

13   according to their terms so as to facilitate streamlined proceedings."  *Concepcion*, 563 U.S. at 344.  The

14   Arbitration Agreement between Plaintiff and Salesforce provides that "all claims or controversies"

15   between the parties shall be "resolve[d] by arbitration," with the exception of claims that may not

16   lawfully be subject to pre-dispute arbitration like Plaintiff's SOX claim.  Declaration of Kimberly

17   Strashovskiy ("Strashovskiy Decl."), Ex. A, at 1; 18 U.S.C. § 1514A(e)(2).

18      Because ten of Plaintiff's eleven claims are expressly covered by the Arbitration Agreement,

19   those claims predominate over the one remaining claim, and the outcome of the one remaining claim

20   is based on overlapping factual allegations, Salesforce respectfully requests that the Court compel

21   Plaintiff to arbitrate Counts 2 through 11 of the Complaint and stay proceedings in this Court pending

22   arbitration.  9 U.S.C. § 3 ("If any suit . . . be brought in any of the courts of the United States upon any

23   issue referable to arbitration under an agreement in writing for such arbitration, the court in which such

24   suit is pending . . . ***shall*** on application of one of the parties stay the trial of the action until such

25   arbitration has been had in accordance with the terms of the agreement . . . .") (emphasis added); *United*

26   *Commc'ns Hub, Inc. v. Qwest Commc'ns, Inc.*, 46 Fed. App'x 412, 415 (9th Cir. 2002) (staying

27   nonarbitrable claims is appropriate "where the arbitrable claims predominate, or where the outcome of

28   the nonarbitrable claims will depend upon the arbitrator's decision").

## II.    STATEMENT OF RELEVANT FACTS

Salesforce is a cloud-based software company headquartered in San Francisco, California, specializing in Customer Relationship Management products.  Strashovskiy Decl. ¶ 4.  Plaintiff Stephen Anderson was hired as a full time employee at Salesforce in March 2015.  Dkt. 1 at 3.  On March 16, 2015, Plaintiff signed an Arbitration Agreement with Salesforce, in which he agreed to "resolve by arbitration all claims or controversies, past, present or future" that he may have against the Company.  Strashovskiy Decl. ¶ 6, Ex. A at 1, 6.  The Arbitration Agreement states that it is governed by the FAA and that it is "intended to apply to the resolution of disputes that otherwise would be resolved in a court of law . . . ."  *Id.*, Ex. A at 1.

The Arbitration Agreement contains numerous employee-friendly provisions designed to make the arbitration cost-effective, efficient, and fair for both parties.  For example, the Arbitration Agreement invokes the well-established Judicial Arbitration & Mediation Services ("JAMS") employment arbitration rules for the proceeding.  *Id.* at 4.  The Arbitration Agreement also provides that any arbitration "shall take place in the county (or comparable government unit) in which [Plaintiff was] last employed by the Company, and no dispute affecting [Plaintiff's] rights or responsibilities shall be adjudicated in any other venue or forum."  *Id.*  In addition, discovery is permitted and "[t]he Arbitrator may award any party any remedy to which that party is entitled under applicable law" and which would otherwise be available in a court of law.  *Id.* at 3–4.  Salesforce does not force this Arbitration Agreement on its employees.  To the contrary, the Arbitration Agreement states in bold text that "[a]rbitration is not a mandatory condition" of employment at Salesforce and that each employee has a right to opt out of the Agreement within 30 days of the employee's receipt of the Agreement.  *Id.* at 5.

Although Plaintiff had the opportunity to opt out of the Arbitration Agreement, he did not.  *Id*. ¶¶ 7–9.  Plaintiff accepted the Arbitration Agreement on March 16, 2015 by signing the Agreement and acknowledging that he had carefully read it, that he understood its terms, that he entered into the Agreement voluntarily, and that he had been given the opportunity to discuss the Agreement with legal counsel.  *Id.*, Ex. A at 5–6.  Accordingly, under the terms of the Arbitration Agreement, Plaintiff and Salesforce agreed to arbitrate their disputes.

1    Nevertheless, on November 5, 2018, Plaintiff filed this lawsuit against Salesforce.  Plaintiff's

2    Complaint alleges that Salesforce discriminated and retaliated against Plaintiff, interfered with his

3    medical leave, and failed to provide reasonable accommodation for his disability or engage in the

4    interactive process to determine a reasonable accommodation.  Dkt. 1 at 8–12.

5    On November 9, 2018, counsel for Salesforce sent Plaintiff's counsel a copy of the Arbitration

6    Agreement and asked if Plaintiff would consent to stay his claims and proceed in arbitration as he is

7    required to do under the Arbitration Agreement.  Declaration of Jason C. Schwartz ("Schwartz Decl.")

8    ¶ 2, Ex. A at 3–4.  Plaintiff's counsel declined, contending that "Count One of the complaint [the SOX

9    claim] is not subject to arbitration.  Because the remaining counts arise from the same alleged facts . . .

10    it would be inappropriate to arbitrate those claims."  *Id.*, Ex. A at 2.  Although counsel for Salesforce

11    explained that the arbitrable claims *must* be arbitrated under binding Supreme Court precedent,

12    Plaintiff's counsel nevertheless did not agree to arbitrate those claims.  *Id.*, Ex. A at 1.

### III.    ARGUMENT

14    The FAA provides that any agreement within its scope "shall be valid, irrevocable, and

15    enforceable."  *See* 9 U.S.C. § 2; *AT&T Mobility, LLC v. Concepcion*, 563 U.S. 333, 339 (2011).  As

16    the Supreme Court has explained, "[t]he overarching purpose of the FAA . . . is to ensure the

17    enforcement of arbitration agreements according to their terms so as to facilitate streamlined

18    proceedings."  *Concepcion*, 563 U.S. at 344.  To accomplish this objective, the FAA permits a party

19    aggrieved by the refusal of another to arbitrate under a written arbitration agreement to petition a district

20    court for an order compelling arbitration in the manner provided by the agreement.  *See* 9 U.S.C. § 4;

21    *Concepcion*, 563 U.S. at 344.  Such an order is appropriate here, as the Arbitration Agreement between

22    Plaintiff and Salesforce is governed by the FAA and is valid and enforceable.  Further, where, as here,

23    "a complaint contains both arbitrable and nonarbitrable claims, the [FAA] **requires** courts to compel

24    arbitration of pendent arbitrable claims when one of the parties files a motion to compel, even where

25    the result would be the possibly inefficient maintenance of separate proceedings in different forums."

26    *KPMG LLP v. Cocchi*, 565 U.S. 18, 22 (2011) (emphasis added) (quotation omitted).  Further, to avoid

27    such potential inefficiencies, courts may *stay* the remaining, nonarbitable claims pending arbitration.

28    9 U.S.C. § 3; *Qwest Commc'ns*, 46 Fed. App'x at 415.

**A.     The Arbitration Agreement Is Governed By The Federal Arbitration Act**

The FAA declares a "liberal federal policy" favoring the enforcement of arbitration agreements. *Concepcion*, 563 U.S. at 346.  Section 2 of the FAA provides:  "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising . . . ***shall be valid, irrevocable, and enforceable***, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2 (emphasis added).

The FAA was enacted to overcome longstanding judicial hostility to arbitration agreements. *See Hall St. Assocs., L.L.C. v. Mattel, Inc.*, 552 U.S. 576, 581 (2008); *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  It not only placed such agreements on equal footing with other contracts, but also established a federal policy in favor of arbitration agreements.  *See Perry v. Thomas*, 482 U.S. 483, 489 (1987); *Green Tree Fin. Corp. v. Randolph*, 531 U.S. 79, 89 (2000).  The policy is so significant that "even claims arising under a statute designed to further important social policies may be arbitrated . . . ."  *Green Tree*, 531 U.S. at 90.  Moreover, the FAA preempts all conflicting state laws, which means states cannot create special exceptions to the enforcement of arbitration agreements governed by the FAA.  *See Preston v. Ferrer*, 552 U.S. 346, 353 (2008) ("The FAA's displacement of conflicting state law is 'now well-established,' and has been repeatedly affirmed" (citations omitted)).  If an agreement is governed by the FAA, courts must effectuate the intent of Congress "to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible."  *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 22 (1983).

Here, the Arbitration Agreement is indisputably governed by the FAA.  First, the Agreement expressly states that it is governed by the FAA (Strashovskiy Decl., Ex. A at 1), which is in and of itself sufficient to bring it within the purview of the FAA.  *See Mastrobuono v. Shearson Lehman Hutton*, 514 U.S. 52, 63–64 (1995); *DIRECTV, Inc. v. Imurgia*, 136 S. Ct. 463, 468–71 (2015).

Second, the Agreement "involv[es] commerce."  9 U.S.C. § 2.  An agreement to arbitrate falls within the purview of the FAA if it is part of a "contract evidencing a transaction involving commerce." *Id.*  This requirement is "broad and is indeed the functional equivalent of 'affecting'" commerce, "even if the parties did not contemplate an interstate commerce connection."  *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 273–74, 281 (1995).  For the FAA to apply, only a "general practice need bear

on interstate commerce in a substantial way." *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52, 57 (2003). The Arbitration Agreement at issue here "involv[es] commerce" because it relates to Plaintiff's employment relationship with Salesforce, which is extensively engaged in interstate—and international—commerce with operations throughout the United States, Canada, Europe, South America, Africa, and Asia. Strashovskiy Decl. ¶ 4; *see Lang v. Skytap, Inc.*, No. 4:18-cv-01292-KAW, 2018 WL 5304842, at *2 (N.D. Cal. Oct. 24, 2018) (finding that an arbitration agreement between an employee and a company offering a cloud computing service affected interstate commerce because the company "has employees in twenty-eight states and major facilities in four states"); *Dobson*, 513 U.S. at 276–77, 282 (concluding that an arbitration agreement "involved interstate commerce" where one signatory was a "multistate" company and some of the materials it used came from out of state); *see also, e.g.*, *CarMax Auto Superstores Cal. LLC v. Hernandez*, 94 F. Supp. 3d 1078, 1099–1102 (C.D. Cal. 2015) (holding that the FAA applied to an arbitration agreement in an employment contract where the employer engaged in interstate commerce). The FAA and related federal substantive law govern the enforceability of the Arbitration Agreement.

**B.     The Arbitration Agreement Is Valid And Must Be Enforced**

Consistent with the principle that arbitration is a matter of contract, the FAA requires courts to compel arbitration "in accordance with the terms of the agreement" upon the motion of a party to the agreement. 9 U.S.C. § 4. In determining whether to compel arbitration under the FAA, courts generally look at two "gateway" issues: (1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute. *See Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83–84 (2002). If there is any doubt as to the proper interpretation of the agreement on any issue related to arbitrability, the FAA "establishes that . . . [it] should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24–25; *see also Ericksen, Arbuthnot, McCarthy, Kearney & Walsh Inc. v. 100 Oak St.*, 35 Cal. 3d 312, 319–20 (1983) (citing *Moses H. Cone* for same). Both of the "gateway" issues under the FAA have been met here.

1      **1.     A Valid Agreement To Arbitrate Exists**

2      "[A]rbitration is a matter of contract . . . ."  *United Steelworkers of Am. v. Warrior & Gulf*

3      *Navigation Co.*, 363 U.S. 574, 582 (1960).  Ordinary state law principles governing the formation of

4      contracts are therefore used to determine whether the parties agreed to arbitrate.  *See First Options of*

5      *Chi., Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Metalclad Corp. v. Ventana Envtl. Organizational*

6      *P'ship*, 109 Cal. App. 4th 1705, 1712 (2003).  The moving party's burden is light in this regard.

7      Salesforce need only show, by a preponderance of the evidence, that an agreement to arbitrate exists.

8      *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 413 (1996).

9      Under California law, a valid contract exists when (1) the parties are capable of contracting,

10     and there is (2) a lawful object, (3) mutual consent, and (4) sufficient cause or consideration.  Cal. Civ.

11     Code § 1550; *see also Stewart v. Preston Pipeline Inc.*, 134 Cal. App. 4th 1565, 1585–86 (2005).  The

12     Arbitration Agreement meets all of these requirements.  First, there is no dispute that the parties are

13     capable of contracting.  *See* Cal. Civ. Code § 1556 ("All persons are capable of contracting, except

14     minors, persons of unsound mind, and persons deprived of civil rights.").  Second, the Arbitration

15     Agreement had a lawful purpose, *i.e.*, the prompt and efficient resolution of disputes in arbitration.  *See*

16     *Preston Pipeline*, 134 Cal. App. 4th at 1586  (finding arbitration provision had lawful purpose of

17     resolving litigation); *see also Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018) (by enacting the

18     FAA, "Congress directed courts to . . . treat arbitration agreements as 'valid, irrevocable, and

19     enforceable'").

20     Third, there is mutual consent.  Plaintiff affirmatively acknowledged his intent to be bound by

21     the terms of the Arbitration Agreement.  *See Marin Storage & Trucking, Inc. v. Benco Contracting &*

22     *Eng'g, Inc.*, 89 Cal. App. 4th 1042, 1049–50 (2001) ("Every contract requires mutual assent or consent

23     (Civ. Code, §§ 1550, 1565), and ordinarily one who signs an instrument which on its face is a contract

24     is deemed to assent to all its terms.").  Moreover, Salesforce provided Plaintiff thirty days after

25     receiving the Arbitration Agreement to opt out.  Strashovskiy Decl., Ex. A at 5.  Plaintiff chose not to

26     opt out of the Arbitration Agreement (*id.* ¶¶ 7–9), evidencing his consent to be bound by its terms.

27     Finally, the Arbitration Agreement is supported by valid consideration:  the parties' mutual

28     promises to arbitrate disputes.  *See Strotz v. Dean Witter Reynolds, Inc.*, 223 Cal. App. 3d 208, 216

Gibson, Dunn &
Crutcher LLP

1    (1990), *overruled on other grounds by Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394 (1996)

2    ("Where an agreement to arbitrate exists, the parties' mutual promises to forego a judicial

3    determination and to arbitrate their disputes provide consideration for each other."). Thus, all of the

4    elements for the valid formation of an agreement to arbitrate exist here.

5          **2.**      **Ten of Plaintiff's Eleven Claims Are Covered By The Arbitration Agreement**

6          "Absent some ambiguity in the agreement . . . it is the language of the contract that defines the

7    scope of disputes subject to arbitration." *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 289 (2002).

8    Courts must "interpret the contract by applying general state-law principles of contract interpretation,

9    while giving due regard to the federal policy in favor of arbitration by resolving ambiguities as to the

10   scope of arbitration in favor of arbitration." *Wagner v. Stratton Oakmont, Inc.*, 83 F.3d 1046, 1049

11   (9th Cir. 1996); *see also United Steelworkers*, 363 U.S. at 582–83 (courts must conclude disputes are

12   covered "unless it may be said with positive assurance that the arbitration clause is not susceptible of

13   an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.").

14         There is no ambiguity in the Arbitration Agreement at issue here. Rather, the Agreement makes

15   clear that all of Plaintiff's claims but one are subject to arbitration. Specifically, Plaintiff agreed that

16   the Arbitration Agreement would apply to:

17         all claims or controversies, past, present or future, whether or not arising out of your
      employment (or its termination), that the Company may have against you or that you

18         (and no other person) may have against . . . the Company . . . [including] disputes
      regarding the employment relationship . . . , ***discrimination*** . . . , and claims arising

19         under the . . . ***Family Medical Leave Act*** . . . , ***state statutes and local ordinances, if***
      ***any, addressing the same or similar subject matters***, and all other state statutory and

20         common law claims.

21   Strashovskiy Decl., Ex. A at 1 (emphases added). In his Complaint, Plaintiff claims he was retaliated

22   and discriminated against during his employment with Salesforce in violation of FMLA, FEHA, CFRA,

23   and the California Labor Code, and that Salesforce interfered with his medical leave, failed to

24   accommodate his disability, and failed to engage in the interactive process to identify a reasonable

25   accommodation. Dkt. 1 at 8–12. All of these claims fall squarely within the scope of the Arbitration

26   Agreement.

27         It is undisputed that Plaintiff's SOX claim is not subject to arbitration; however, this has no

28   bearing on whether Plaintiff's ten arbitrable claims should proceed in arbitration. Indeed, as the

1  Supreme Court has held, "when a complaint contains both arbitrable and nonarbitrable claims, the

2  [FAA] requires courts to 'compel arbitration of pendent arbitrable claims when one of the parties files

3  a motion to compel, even where the result would be the possibly inefficient maintenance of separate

4  proceedings in different forums.'" *KPMG*, 565 U.S. at 22 (quoting *Dean Witter Reynolds Inc. v. Byrd*,

5  470 U.S. 213, 217 (1985)).

6      In support of his argument that arbitration is improper here, Plaintiff relies on two inapposite

7  out-of-circuit district court cases holding that where a SOX claim is "entangled with" the remaining

8  claims, arbitration is improper. *See* Schwartz Decl., Ex. A at 2 (citing *Stewart v. Doral Fin. Corp.*, 997

9  F. Supp. 2d 129, 139–40 (D.P.R. 2014); *Laubenstein v. Conair Corp.*, 2014 WL 6609164, at *3 (W.D.

10  Ark. Nov. 19, 2014)).  However, because these two cases conflict with the FAA and the Supreme

11  Court's express directive in *KPMG*, they are wrongly decided, as at least one other district court has

12  since recognized.  *See Wiggins v. ING U.S., Inc.*, 2015 WL 3771646, at *7 (D. Conn. Dec. 15, 2015)

13  (rejecting *Stewart* and *Laubenstein* and holding "The court is aware of nothing in the text of the

14  applicable statues or rules indicating that 'entangled' claims or claims that simply arise from the same

15  set of operative facts as nonarbitrable claims escape otherwise-valid pre-dispute arbitration clauses, or

16  that the financial or other burdens on the parties is relevant to the determination whether to enforce an

17  arbitration clause in this context").  Indeed, *Stewart* did not cite *KPMG* at all, and *Laubenstein* relied

18  entirely on *Stewart* in denying arbitration.  And the basis for denying arbitration in *Stewart*—because

19  it would "place a substantial financial and temporal burden on all parties involved" to arbitrate some

20  claims but not others, *Stewart*, 997 F. Supp. 2d at 140—directly conflicts with the Supreme Court's

21  holding in *KPMG* that arbitration is required "even where the result would be the possibly inefficient

22  maintenance of separate proceedings in different forums." *KPMG*, 565 U.S. at 22.  Nor is there any

23  statutory authority exempting otherwise arbitrable claims from arbitration just because they are brought

24  in the same lawsuit as a SOX claim.  Such a rule would enable litigants to avoid arbitration simply by

25  pleading a SOX cause of action, a result that would directly contravene the purpose of the FAA.  *See*

26  *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (the FAA establishes a "liberal federal

27  policy" favoring arbitration) (internal quotation marks omitted); *Lewis*, 138 S. Ct. at 1620 (the FAA

28  requires courts to "rigorously . . . enforce arbitration agreements according to their terms") (internal

Gibson, Dunn &
Crutcher LLP

1    quotation marks omitted); *Moses H. Cone*, 460 U.S. at 24–25 ("[A]ny doubts concerning the scope of

2    arbitrable issues should be resolved in favor of arbitration.").

3         Further, numerous courts in the Ninth Circuit have compelled arbitration of claims even when

4    there are additional claims that cannot be arbitrated.  *See Mohebbi v. Khazen*, No. 13-CV-03044-BLF,

5    2014 WL 6845477, at *7 (N.D. Cal. Dec. 4, 2014); *Warner Bros. Entm't Inc. v. Starline Tours of*

6    *Hollywood, Inc.*, No. CV 16-02001 SJO, 2016 WL 10771309, at *8 (C.D. Cal. June 20, 2016); *Jenkins*

7    *v. Sterling Jewelers, Inc.*, No. 17-cv-1999-MMA (BGS), 2018 WL 922386, at *8 (S.D. Cal. Feb. 16,

8    2018).  The approach of these courts is consistent with the broad policy favoring arbitration as

9    repeatedly enumerated by the Supreme Court.  That Plaintiff has pleaded one nonarbitrable claim does

10   not prevent his other ten claims from proceeding in arbitration.

11   **C.    The Matter Should Be Stayed While Arbitration Proceeds**

12        The FAA requires that a case be stayed until arbitration is complete, including the claims that

13   are not subject to the arbitration agreement.  9 U.S.C. § 3; *see also Concepcion*, 563 U.S. at 344

14   (Section 3 of the FAA "requires courts to stay litigation of arbitral claims pending arbitration of those

15   claims 'in accordance with the terms of the agreement'"); *Mohebbi*, 2014 WL 6845477, at *12

16   ("[W]hen a court determines that some claims are arbitrable while some are not, the claims that are not

17   arbitrable must be stayed pending the completion of arbitration.").

18        Here, Plaintiff has asserted eleven claims under a variety of state and federal laws.  Ten of those

19   claims—including retaliation in violation of FMLA, FEHA, CFRA, and the California Labor Code—

20   are undoubtedly subject to the Arbitration Agreement.  *See* Strashovskiy Decl., Ex. A at 1.  And the

21   remaining claim—retaliation in violation of SOX—is factually intertwined with Plaintiff's claim of

22   retaliation in violation of the California Labor Code.  Both retaliation claims rely on the same set of

23   alleged facts.  For example, in his California retaliation claim, Anderson alleges that he "disclosed

24   information" to "a person with authority over him" and that he had "reasonable cause to believe [this

25   information] disclosed a violation of . . . federal and state[] statutes and regulations."  Dkt. 1 at 9.

26   Likewise, in his SOX retaliation claim, Anderson alleges that he "provided information" to a "person

27   with supervisory authority" over him regarding conduct he "reasonably believed constituted a violation

28   of" various provisions of federal law.  *Id.* at 8.  And, in his California retaliation claim, Anderson

1   alleges that his disclosure of information "was a contributing factor for [his] termination . . . ." *Id.* at

2   9.   Likewise, in his SOX retaliation claim, he alleges that he was terminated "because of his

3   complaints." *Id.* at 8.  Indeed, both claims incorporate by reference exactly the same facts. *See id.* at

4   1.   Thus, the arbitrable and nonarbitrable issues "all arise from the identical conduct, and are

5   intertwined," which weighs in favor of staying the case pending arbitration. *Sharp Corp. v. Hisense*

6   *USA Corp.*, No. 17-cv-03341-YGR, 2017 WL 6017897, at *5 (N.D. Cal. Dec. 5, 2017).

7          Moreover, the arbitrator's findings may obviate any inquiry into the nonarbitrable SOX claim,

8   thereby enabling dismissal, on issue preclusion grounds, of any remaining claims before this Court.

9   *See Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005) (noting that a discretionary stay is

10  warranted where parallel action will help settle or simplify questions of fact and law); *Qwest*

11  *Commc'ns, Inc.*, 46 Fed. App'x at 415 (staying nonarbitrable claims is appropriate "where the arbitrable

12  claims predominate, or where the outcome of the nonarbitrable claims will depend upon the arbitrator's

13  decision").   And, in any case, when some claims are subject to arbitration and the remaining

14  nonarbitrable claims implicate the same facts, a stay of the nonarbitrable claims is appropriate to

15  conserve judicial resources and avoid subjecting the parties to duplicative discovery. *See Swift v. Zynga*

16  *Game Network, Inc.*, 805 F. Supp. 2d 904, 917–18 (N.D. Cal. 2011) (staying nonarbitrable claims when

17  the claims involved a "common nucleus of facts" in order to "conserve judicial resources"); *Paramount*

18  *Farms, Inc. v. Ventilex B. V.,* No. CV F 08-1027 LJO SMS, 2009 WL 161052, at * 11 (E.D. Cal. Jan.

19  22, 2009) (citing *Pryner v. Tractor Supply Co.,* 109 F.3d 354, 361 (7th Cir. 1997), *cert. denied,* 522

20  U.S. 912 (1997)) ("A court can properly stay a suit before it if *any* issue in the suit is arbitrable, even

21  if some issues are not.") (emphasis in original); *VanSlyck v. GoJet Airlines, LLC*, 323 F.R.D. 266, 277

22  (N.D. Ill. 2018) (staying nonarbitrable claims pending arbitration because "the parties and the Court

23  would avoid duplicative discovery efforts by allowing any discovery necessary in the arbitration to

24  proceed first").  Accordingly, Plaintiff's case against Salesforce, including the SOX retaliation claim,

25  should be stayed until the completion of arbitration.

26

27

28

1

## IV.    CONCLUSION

2      For the reasons set forth above, Salesforce respectfully requests that this Court compel

3  Anderson to arbitrate the claims asserted in his Complaint and stay the instant proceedings pending

4  arbitration.

5

Dated:  December 5, 2018

6
                                        GIBSON, DUNN & CRUTCHER LLP
7

8

9                                       By:    /s/ Jason C. Schwartz
                                               Jason C. Schwartz

10                                      Attorneys for Defendant SALESFORCE.COM, INC.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**PROOF OF SERVICE**

I, Zoë Klein, declare as follows:

I am employed in the District of Columbia; I am over the age of eighteen years and am not a party to this action; my business address is 1050 Connecticut Avenue, NW, Washington, D.C. 20036. On December 5, 2018, I served the following document(s):

**DEFENDANT'S NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**DECLARATION OF JASON C. SCHWARTZ IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**DECLARATION OF KIMBERLY STRASHOVSKIY IN SUPPORT OF DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

**[PROPOSED] ORDER GRANTING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

On the parties stated below, by the following means of service:

Richard A. Hoyer
rhoyer@hoyerlaw.com
Ryan L. Hicks
rhicks@hoyerlaw.com
Nicole B. Gage
ngage@hoyerlaw.com
HOYER & HICKS
4 Embarcadero Center, Suite 1400
San Francisco, CA 94111
Telephone:    415.766.3539
Facsimile:    415.276.1738

☑    **BY ELECTRONIC TRANSFER TO THE CM/ECF SYSTEM**:  On this date, I electronically uploaded a true and correct copy in Adobe "pdf" format the above-listed document(s) to the United States District Court's Case Management and Electronic Case Filing (CM/ECF) system. After the electronic filing of a document, service is deemed complete upon receipt of the Notice of Electronic Filing ("NEF") by the registered CM/ECF users.

☑    **(FEDERAL)** I declare under penalty of perjury that the foregoing is true and correct.

Executed on December 5, 2018

_/s/ Zoë A. Klein_____
Zoë A. Klein

Gibson, Dunn &
Crutcher LLP

1